ALBERT (PUG) DAVIS V. THE STATE.

No. 16566. Delivered March 28, 1934.
Rehearing Denied (Without Written Opinion) May 9, 1934.

The opinion states the case.

*W. E. Myres*, of Fort Worth, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft; the punishment, confinement in the penitentiary for two years.

On the night of the 24th of May, 1933, Floyd Davis parked his blue Pontiac coupe, 1929 model, near a dance hall. At the time he left his car appellant and some other men were standing near it. Appellant had a patch or bandage over one eye. After the dance Davis discovered that his car had been stolen. Instituting a search on the following day, an officer and Mr. Davis found some car tracks leading from the home of appellant's father to a branch. Appellant lived with his father. The officer testified: "When we went to Mr. John L. Davis' house we found that this car had come out the big gate there at the house into this road." It had been raining, and upon following the tracks to the branch, Mr. Davis and the officer were unable to cross. They later went back, and crossing the branch, found

the stolen car in some brush. There was only one set of tracks leading from appellant's home to the branch. The car had been dismantled and the parts hidden in various places in the brush. Three casings were missing. Near the automobile they found a patch or bandage. The missing casings consisted of two Federal tires and one Firestone. About ten o'clock on the night of the theft the sheriff saw two Pontiac coupes in front of Mrs. Morris' house. One of the cars was black and the other blue. There was someone in the black car. Appellant was in front of the house on the ground. There was no one in the blue Pontiac. The cars were close together and headed in the same direction. Appellant owned a black Pontiac coupe. About two and one-half months after the loss of his car Mr. Davis observed appellant's Pontiac coupe parked near the courthouse. Upon making an investigation, he discovered two Federal tires and one Firestone on the car. He testified on direct examination: "I know positively that those three casings were my casings." On cross examination he testified that he believed the casings were his but would not swear positively that they were. However, further on cross examination, he made the following statement: "With reference to the Firestone tire I found here on Pug Davis' (appellant's) car I had used it on the front wheel where the wheels were wobbling bad and were worn around in grooves, all the way around the tire, and then it had some patches in it that I recognized it by." Again, he testified on cross examination that he would know the Firestone tire anywhere; that he had changed it many times and knew just what he had put in it. On his redirect examination the witness was asked to look at the Firestone casing that had been taken from appellant's car. Showing it to the jury, he said: "That is my casing. I identify it more by these places being cut out in it. Also when the tire was new I punched a hole in it with a stick or something. It went through the center when it was new, and they put a plug in there from the inside with a little stem on it, pulled it through from the inside. Right here is where it was. When we found the tire that plug had been removed, but it was worn inside just the size of the plug. This is the place here. That is where the stick went through the tire when it was new. I knew that place on that tire. I had been using and fooling with that tire about a year and a half, and I know positively that it is my tire. This is one of the tires taken off of Pug Davis' (appellant's) car here, and is one of the tires that was on my car when it was stolen." Thereafter, on recross-examination the witness said: "I know positively this is my tire. Besides

what I have stated I know this tire by those places being worn by the wheels wobbling that way."

Appellant did not testify in his own behalf. Ira Vaughn testified that he went with appellant to the dance on the occasion in question in appellant's automobile, and that, leaving the dance, they drove in appellant's car to the home of appellant's father, where they spent the night. He denied that they took Mr. Davis' car. Appellant's father testified that appellant remained at home with Ira Vaughn after he had returned from the dance.

We are unable to agree with appellant's contention that the evidence is insufficient.

No other question is presented for review.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.